IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

KENNETH J. PHELAN,

               Petitioner,

      vs.

MICHAEL SHEAHAN,[1] Superintendent,
Five Points Correctional Facility,

               Respondent.

No. 9:11-cv-00416-JKS

MEMORANDUM DECISION

      Kenneth J. Phelan, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas

Corpus under 28 U.S.C. § 2254. Phelan is currently in the custody of the N.Y. Department of

Corrections and Community Supervision, incarcerated at the Five Points Correctional Facility.

Respondent has answered, and Phelan has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

      Following a jury trial in Albany County, Phelan was convicted of two counts of Criminal

Contempt in the First Degree (N.Y. Penal Law § 215.51(b)(iii)), one count of Aggravated

Harassment in the Second Degree (N.Y. Penal Law § 240.30[1](b)), and one count of Stalking in

the Third Degree (N.Y. Penal Law § 120.50[3]). In March 2009 the Albany County Court

sentenced Phelan, a second felony offender, to an indeterminate prison term of two to four years

on the criminal contempt conviction, to run concurrently with one year sentences on each of the

harassment and stalking convictions. The trial court further ordered these sentences to run

consecutive to an indeterminate sentence of two and one-half to five years imposed on an earlier

---

[1] Michael Sheahan, Superintendent, Five Points Correctional Center, is substituted for
Bezio, Superintendent, Great Meadow Correctional Facility. Fed. R. Civ. P. 25(d).

conviction.  On  August 6, 2009, while his appeal was pending, Phelan, appearing *pro se*, filed a

motion to vacate his conviction under N.Y. Criminal Procedure Law § 440.10 ("CPL § 440.10

motion") in the Albany County Court, which was denied in a reasoned decision on November 20,

2009.  The Appellate Division, Third Department, after consolidating the appeal from his

conviction and the appeal from the denial of his CPL § 440.10 motion, affirmed Phelan's

conviction, sentence and denial of his CPL § 440.10 motion in a published decision, and the New

York Court of Appeals denied leave to appeal on June 13, 2011.[2]  While his appeal was pending,

Phelan also filed a motion for writ of error *coram nobis* in the Appellate Division, which was

summarily denied without opinion or citation to authority in an unreported slip opinion, and the

New York Court of Appeals denied leave to appeal on March 30, 2012.[3]  Phelan timely filed his

Petition for relief in this Court on March 30, 2011.

  The Appellate Division summarized the facts underlying Phelan's conviction:

> As a result of [Phelan's] interactions and communications with the victim
> between April and June 2008, a temporary order of protection was issued on July 1,
> 2008 directing that [Phelan] stay away from and avoid any contact with the victim.
> Later that day, the victim received two e-mails allegedly sent by [Phelan]—one
> stating, "You are dead [b]* *ch!!  $10,000 reward for your death," and the other
> stating, among other things, "We will kill you."  The victim also discovered that
> [Phelan] had posted on "Craigslist," a public Internet Web site, her name, address,
> license plate number, place of employment, and make and model of her car, and he
> identified her as an illegal immigrant living in the City of Albany who was using a
> stolen Social Security number and date of birth.
>   Subsequently, in response to [Phelan's] report that the victim was an illegal
> immigrant, a State Police investigator conducted a background check of the victim
> and learned that she was a legal resident of the United States.  He also learned of the

---

[2] *People v. Phelan*, 918 N.Y.S.2d 608 (App. Div. 2011), *lv. denied*, 952 N.E.2d 1102
(N.Y. 2011) (Table) ("*Phelan I*").

[3] *People v. Phelan*, 2011 N.Y. Slip Op. 64404(U) (App. Div. 2011), *lv. denied*, 967
N.E.2d 715 (N.Y. 2012) (Table) ("*Phelan II*").

order of protection against [Phelan] in favor of the victim. After speaking with the victim and obtaining a supporting deposition, the investigator obtained a search warrant for [Phelan's] residence. Upon execution of the warrant, the police discovered, among other things, a file entitled "Secret I Spy Covert File" under [Phelan's] mattress that contained information about the victim, as well as a rolodex with the e-mail address and password to the e-mail account from which the two threatening e-mails were sent to the victim.[4]

## II. ISSUES RAISED/DEFENSES

Phelan raises eight enumerated grounds: (1) ineffective assistance of trial counsel (failure to argue a *Payton* violation[5] or that Phelan's First Amendment rights were violated); (2) ineffective assistance of trial counsel (failure to object to admission of illegally seized evidence); (3) insufficiency of the evidence; (4) prosecutorial misconduct; (5) ineffective assistance of trial counsel (failure to argue disability as a mitigating factor at sentencing); (6) ineffective assistance of trial counsel (a veritable "laundry list" of alleged deficiencies); (7) ineffective assistance of appellate counsel; and (8) illegal arrest and use of evidence seized in violation of the Fourth Amendment. Respondent contends that Phelan's first ground is partially unexhausted (failure to argue the First Amendment violation), and that his fourth (prosecutorial misconduct), fifth (ineffective assistance of counsel at sentencing), sixth (ineffective assistance of trial counsel), and eighth (Fourth Amendment) grounds are unexhausted.[6] Respondent also contends that the

---

[4] *Phelan I*, 918 N.Y.S.2d at 610.

[5] *Payton v. New York*, 445 U.S. 573 (1980) (a shorthand reference to the Fourth Amendment prohibition of making a warrantless and nonconsensual entry into an individual's home to make a routine felony arrest in the absence of exigent circumstances).

[6] Respondent also contends that the seventh ground (ineffective appellate counsel) is unexhausted. This Court disagrees. Contrary to Respondent's contentions, Phelan did raise the claim of ineffective assistance of appellate counsel in *Phelan II*

unexhausted grounds are procedurally barred.  Finally, Respondent contends that Phelan's third ground is procedurally barred.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[7]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[8]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[9]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[10]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must

---

[7] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[8] *Williams*, 529 U.S. at 412 (alteration added).

[9] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[10] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam).

be "objectively unreasonable," not just "incorrect or erroneous."[11] The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[12] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[13] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[14] Phelan "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[15]

The Supreme Court recently underscored the magnitude of the deference required:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the

---

[11] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[12] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[13] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[14] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[15] *Hawkings v. Castello*, 460 F.3d 238, 264 (2d Cir. 2006) (internal quotation marks and citations omitted).

state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[16]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[17]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[18]  Although pre-AEDPA precedent established that deference is due to the findings of state appellate courts,[19] the Second Circuit has left the question open with respect to AEDPA cases.[20]  In the absence of a clear indication from the Second Circuit to the contrary, this Court can find no principled reason not to apply the same rule in the context of AEDPA, i.e., findings of a state appellate court are presumed to be correct.

---

[16] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[17] *Cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . "); *Jones v. Stinson*, 229 F.3d 112, 118 (2d. Cir. 2000).

[18] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[19] *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992).

[20] *See Boyette v. Lefevre*, 246 F.3d 76, 88 n.7 (2d Cir. 2001).

## IV. DISCUSSION

## A.    Exhaustion

This Court may not consider claims that have not been fairly presented to the state courts.[21]  Unexhausted claims must be dismissed.[22]  To be exhausted the claim must have been presented to the highest state court that may consider the issue presented.[23]  "[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief."[24]  A mere appeal to a broad constitutional guarantee, e.g., due process, is insufficient to present the substance of a constitutional claim to the state courts.[25]  A petitioner satisfies the fair presentation aspect of the exhaustion requirement by presenting the essential factual and legal premises of his federal constitutional claim to the appropriate state courts.[26]  An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used.[27]  Exhaustion does not require Phelan to have cited

---

[21] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[22] *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005); *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982); *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

[23] *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[24] *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (citing *Picard v. Connor*, 404 U.S. 270 (1971)).

[25] *See Id.* at 163; *Anderson v. Harless*, 459 U.S. 4, 7 (1982).

[26] *Acosta v. Artuz*, 575 F.3d 177, 185 (2d Cir. 2009) (citing *Reese*, 541 U.S. at 30-34); *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005).

[27] *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).

the "book and verse on the federal constitution."[28]  A petitioner who does not cite "book and verse of the Constitution" may nonetheless "fairly present to the state courts the constitutional nature of his claim" through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.[29]

In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal.[30]  Claims are fairly presented to the New York Court of Appeals when the application for leave to appeal clearly states that all claims in the attached brief are being pressed, or no arguments are made in detail and the application simply requests review of all issues outlined in the brief.[31]  Where the application for leave to appeal refers to specific claims raised before the Appellate Division but omits mention of others, the unmentioned claims are deemed abandoned.[32]  Where the application for leave to appeal argues one or more specific claims but only makes a passing

---

[28] *Connor*, 404 U.S. at 278.

[29] *DeSimone v. Phillips*, 461 F.3d 181, 190 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Daye v. Atty Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc)).

[30] *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

[31] *Jordan v. Lefevre*, 206 F.3d 196, 199 (2d Cir. 2000); *see also Morgan v. Bennett*, 204 F.3d 360, 369-71 (2d Cir. 2000) (the application for leave to appeal did not specify any particular issue for review, but enclosed the briefs filed in the Appellate Division and requested the Court of Appeals consider and review all issues raised in the appellant's brief and *pro se* supplemental brief).

[32] *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).

reference to possible other claims found in the attached briefs, the claims mentioned in passing have not been fairly presented to the Court of Appeals.[33]

Even if a federal claim has not been properly presented to the highest state court or preserved under state law, it will be deemed exhausted if it has become procedurally barred under state law.[34]

> In the case of procedural default (including where an unexhausted claim no longer can proceed in state court), we may reach the merits of the claim "only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent."[35]

In his counseled brief before the Appellate Division, Phelan raised four grounds: (1) ineffective assistance of counsel because counsel withdrew the suppression motion at the end of the *Mapp/Huntley* hearing;[36] (2) denial of a motion to dismiss (insufficiency of the evidence); (3) error in the *Sandoval* ruling;[37] and (4) that the sentence imposed was excessive. In his *pro se* brief Phelan claimed that counsel was ineffective: (1) for failing to object to an alleged fraudulent order of protection, (2) because counsel did not permit Phelan to take the stand in his own defense, (3) failed to get Phelan released on bail, and (4) did not obtain Phelan's release

---

[33] *Jordan*, 206 F.3d at 198.

[34] *See Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201-02 (2d Cir. 2010).

[35] *St. Helens*, 374 F.3d at 184 (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

[36] *Mapp v. Ohio*, 367 U.S. 643 (1961) (a short-hand reference to excluding evidence obtained as a result of an unconstitutional search and seizure); *People v. Huntley*, 371 N.E.2d 794 (N.Y. 1977) (a shorthand reference to the procedure under New York law for seeking suppression of statements made to law enforcement officers).

[37]*People v. Sandoval*, 314 N.E.2d 413 (N.Y. 1974) (a short-hand reference to the procedure under New York law under which the trial court determines in advance whether evidence of prior convictions is admissible in the event that the defendant testifies).

when he was not brought to a hearing or indicted within the time specified under New York law.

In his application for leave to appeal to the Court of Appeals, Phelan stated:

> [Phelan] contends that the Appellate Division erred in affirming the County Court's Sandoval ruling. [Phelan] contends that he was denied the effective assistance of counsel and the court erred in not granting his motion to dismiss and in its Sandoval ruling. Lastly, [Phelan's] sentence was harsh and excessive.
>
> CONCLUSION
>
> Based upon the arguments contained in [Phelan's] brief, which is incorporated into this letter petition, [Phelan] respectfully requests that leave to appeal to the Court of Appeals be granted.[38]

Attached to the application were the Appellant's brief, Respondent's brief, and Appellant's *pro se* brief. Phelan raised his ineffective assistance of appellate counsel in his *coram nobis* motion.

This Court agrees that, because they were not properly raised in the state courts, i.e., in the application for leave to appeal, Phelan's Fourth (prosecutorial misconduct) and eighth (illegal arrest and seizure) grounds are unexhausted. On the other hand, Phelan raised his third ground (insufficiency of the evidence claim) in his counseled brief before the Appellate Division. Phelan also raised some, but not all, of his ineffective assistance of counsel claims in either, or both, of his counseled and *pro se* briefs. Phelan also raised the ineffective assistance of counsel claims contained in his first and his second grounds. Phelan did not, however, raise his fifth ground (ineffective assistance of counsel for failing to argue disability as a mitigating factor at sentencing). With respect to his sixth ground, except to the extent that Phelan raised the issues in his *pro se* appellate brief, they are not properly exhausted.[39] Phelan's eighth ground simply

---

[38] Docket No. 11-10 at 3.

[39] In his Petition Phelan refers to attached "appendix pages 180-83," consisting of excerpts from his CPL § 440.10 motion. Although Phelan claimed a number of alleged deficiencies in that motion, the only two exhausted claims included are the refusal to allow

(continued...)

asserts his ineffective assistance of counsel *Payton*-based argument as an independent ground in itself. Although technically, Phelan did not raise this as an independent ground before the state courts, this Court must still address it on the merits in connection with ruling on Phelan's claim that the failure to argue the point constituted ineffective assistance of counsel.

Thus, this Court concludes that Phelan has not properly exhausted his state-court remedies with respect to his fourth and fifth grounds. This Court further concludes that, except to the extent that they were raised in his *pro se* appellate brief, Phelan has not properly exhausted his state-court remedies claims of ineffective assistance of counsel raised as part of his sixth ground. Because Phelan has already had his one and only appeal and has filed a CPL § 440.10 motion, he would be precluded from raising these claims in a second CPL § 440.10 motion.[40] Since Phelan no longer has any remedy available, these claims are deemed exhausted and procedurally barred from review in a federal habeas proceeding.[41]

## B.      Procedural Bar

Respondent contends that Phelan's third ground is procedurally barred. In that ground Phelan contends that there was insufficient evidence to establish that he sent the threatening e-

---

[39](...continued)
Phelan to take the stand and the failure to obtain a dismissal when the prosecutor failed to obtain a timely indictment. Phelan does not raise in his Petition before this Court either the failure to object to the alleged fraudulent order of protection or the failure to obtain release on bail. Thus, these latter two issues are not before this Court.

[40] CPL § 440.10[2][c] (barring review of a claim that could have been presented on direct appeal); CPL § 440.10[3][c] (barring review of a claim that could have been presented in a previous CPL § 440.10 motion); *see Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001).

[41] *Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201-02 (2d Cir. 2010); *see Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).

mails or that he was served with the first (July) order of protection. In denying Phelan relief, the

Appellate Division held:

> We are unpersuaded by [Phelan's] challenge to the verdict as contrary to the weight of the evidence. With respect to the criminal contempt counts, [Phelan] argues that there is no evidence that he sent the two threatening e-mails or was served with or aware of the conditions of the order of protection. We disagree. Evidence was presented that [Phelan] was present in court on July 1, 2008 when the order of protection was issued and his signature appears on the order indicating that he had been served with it and advised of its contents. Furthermore, although the police were unable to locate the threatening e-mails upon a search of [Phelan's] computer, [Phelan's] possession of the rolodex containing the e-mail address and password for the account from which the e-mails were sent was sufficient to establish that they originated from him.[42]

Under the adequate-and-independent-state-ground doctrine, federal courts may not review

the judgment of a state court that "rests on a state-law ground that is both 'independent' of the

merits of the federal claim and an 'adequate' basis for the court's decision."[43] Because this

doctrine applies on federal habeas review, and because the state-law ground may be a procedural

bar,[44] federal habeas courts often speak of an "adequate and independent procedural bar" to

federal review of a claim or simply of a "procedurally barred" federal claim.

A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a

state court where the state court judgment "rests on a state law ground that is independent of the

federal question and adequate to support the judgment."[45] Where a decision "fairly appear[s] to

rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy

---

[42] *Phelan*, 918 N.YS.2d at 610-11.

[43] *Harris v. Reed,* 489 U.S. 255, 260 (1989).

[44] *Id.* at 261-62.

[45] *Coleman,* 501 U.S. at 729.

and independence of any possible state law ground is not clear from the face of the opinion," habeas courts presume that there is no adequate and independent state law ground supporting the judgment.[46] This rule even applies where the state court has ruled on the merits in the alternative.[47] Finally, "[s]tate courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims."[48] Accordingly, a procedural bar will be deemed "adequate" only if it is based on a rule that is "firmly established and regularly followed" by the state in question.[49]

To classify the decision as either fairly appearing to rest primarily on or interwoven with federal law, or as resting primarily on state procedural law, this Court looks to three factors: (1) the face of the state court opinion; (2) whether the state court was aware of a procedural bar; and (3) the practice of state courts in similar circumstances.[50] There is no question that the Appellate Division explicitly invoked the state procedural rule as barring review of Phelan's insufficiency of the evidence argument. Looking behind the asserted state law grounds, as the Court must, the Court agrees with Respondent that the procedural ground cited by the Appellate Division, unpreserved for review, is firmly established and regularly followed by the New York courts.[51]

To avoid a procedural bar, Phelan must demonstrate either cause for the default and actual prejudice, or that the failure to consider the claims will result in a fundamental miscarriage

---

[46] *Id.* at 735.

[47] *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).

[48] *Hathorn v. Lovorn,* 457 U.S. 255, 263 (1982).

[49] *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991).

[50] *Jimenez v. Walker*, 458 F.3d 130, 145 and n.16 (2d Cir. 2006).

[51] *Rhagi v. Artuz*, 309 F.3d 103, 106-07 (2d Cir. 2002).

of justice.[52]  To prove a fundamental miscarriage of justice, Phelan must show that a constitutional violation probably resulted in his conviction despite his actual innocence.[53]  Phelan has not made any such showing.

Even if this Court were to reach the merits, Phelan would not prevail.  Under New York law, the Appellate Division employs two standards of review—legal sufficiency and weight of the evidence.[54]  Although related, each requires a discrete analysis.  Under the legal-sufficiency standard, the Appellate Division must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[55]  Under the weight-of-the-evidence standard, the court must examine the evidence further.  If, based upon all the credible evidence, a different finding would not have been unreasonable, the Appellate Division must, giving deference to the jury on credibility, weigh the relative probative force of the conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony.[56]  In determining the weight of the evidence, the Appellate Division determines credibility issues; it must assess the

---

[52] *Coleman*, 501 U.S. at 749-50 (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)).

[53] *See Schlup v. Delo,* 513 U.S. 298, 321-25 (1995) (linking miscarriages of justice to actual innocence); *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); *Carrier,* 477 U.S. at 496 ("in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.")

[54] N.Y. Crim. Proc. Law § 470.15[4](b), [5].

[55] *People v. Santi*, 818 N.E.2d 1146, 1153 (N.Y. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[56] *People v. Bleakley*, 508 N.E.2d 672, 674-75 (N.Y. 1987).

evidence in light of the elements of the crime as charged to the jury.[57]  That is, the Appellate

Division "must consider the elements of the crime, for even if the prosecution's witnesses were

credible their testimony must prove the elements of the crime beyond a reasonable doubt."[58]  A

verdict that satisfies the legally sufficient test may nevertheless be against the weight of the

evidence.[59]

A "weight of the evidence" argument is a pure state law claim grounded in the criminal

procedure statute, whereas a legal sufficiency claim is based on federal due process principles.

Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on

habeas review.   In making a "weight of the evidence" argument, Phelan has not asserted a

federal claim; instead, he has raised an error of state law, for which habeas review is not

available.[60]

Even presented as a sufficiency of the evidence question, Phelan would not prevail.

Under *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt."[61]  In making a

sufficiency of the evidence determination, this Court may not usurp the role of the finder of fact

by considering how it would have resolved any conflicts in the evidence, made the inferences, or

---

[57] *People v. Johnson*, 890 N.E.2d 877, 879 (N.Y. 2008).

[58] *People v. Danielson*, 880 N.E.2d 1, 5 (N.Y. 2007).

[59] *Id*.

[60] *Brown v. Gouverneur Corr. Facility*, 408 F. Supp. 2d 175, 183–84 (W.D.N.Y. 2006).

[61] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

considered the evidence at trial.[62]  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[63]

Phelan misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[64]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[65]  Unlike the Appellate Division applying the New York "weight-of-the-evidence" test, this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime as prescribed by state law.[66]

In this case, the Appellate Division, a state court applying the more favorable to Phelan weight of the evidence test, found that there was sufficient evidence of each element of the crimes to support conviction under state law.  Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the

---

[62] *Jackson*, 443 U.S. at 318-19.

[63] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

[64] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[65] *Jackson*, 443 U.S. at 324 n.16.

[66] *See Schlup*, 513 U.S. at 330.

prosecution.[67]  Phelan bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous;[68] a burden Phelan has failed to carry.  The record does not compel the conclusion that no rational trier of fact could have found proof of guilt, especially considering the double deference owed under *Jackson* and AEDPA.  Phelan is not entitled to relief under his third ground.

**C.    Merits**

Grounds 1, 2, and 6:  Ineffective Trial Counsel; Ground 8:  *Payton* Violation

Under *Strickland,* to demonstrate ineffective assistance of counsel, Phelan must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[69]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[70]  Phelan must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[71]  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[72]

------

[67] *See Jackson*, 443 U.S. at 326.

[68] 28 U.S.C. § 2254(e)(1).

[69] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[70] *Id*.

[71] *Woodford v. Visciotti*, 537 U.S. 19, 22-23 (2002); *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[72] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and

(continued...)

*Ground 1: Payton Violation.* Phelan contends that he was illegally arrested in his home without an arrest warrant and absent exigent circumstances; thus, according to Phelan the evidence seized should have been excluded and his counsel was ineffective for failing to pursue that question. The Appellate Division rejected this argument:

> Similarly unpersuasive is [Phelan's] claim that he was deprived of the effective assistance of counsel. Although [Phelan] deems counsel ineffective for withdrawing his suppression motions, our review of the evidence adduced at the *Huntley* and *Wade* hearing fails to reveal any likelihood of success of a challenge to the admissibility of his statements to police or the evidence seized from his residence pursuant to the search warrant. Furthermore, as the record reveals no colorable factual or legal basis for suppression as the product of an unlawful arrest, counsel was not remiss in failing to advance this argument."[73]

Phelan's reliance on *Payton* is misplaced. While Phelan is correct that under *Payton* a warrantless and nonconsensual entry into a residence in order to make a routine felony-arrest violates the Fourth Amendment,[74] *Payton* is inapposite. In this case, the police entered the residence under a *search* warrant, the validity of which is unchallenged. After executing the search warrant and finding evidence of Phelan's guilt, the police officers arrested Phelan. In *Payton*, the police had neither a search warrant nor an arrest warrant. A careful reading of *Payton*, which is based upon the sanctity of the home against intrusion, does not support the proposition that the police must have an *arrest* warrant to arrest a person incidental to a lawful entry under a *search* warrant.[75] Because the police were lawfully in his residence, as long as they

---

[72](...continued)
need not address both prongs if the defendant fails on one).

[73] *Phelan*, 918 N.Y.S.2d at 612 (citations omitted).

[74] *Payton*, 445 U.S. at 576.

[75] *See id.* at 585, 588-90.

had probable cause the police were entitled to arrest him.[76]  Phelan does not contend a lack of probable cause, simply a lack of exigent circumstances.

Because there was no reasonable basis upon which to raise a claim based upon *Payton*, trial counsel was not ineffective in failing to raise it.  For the same reasons, Phelan's eighth ground, the independent claim of a *Payton* violation, also fails.

*Ground 1:  First Amendment Claim.*  Phelan contends that the information he posted on the internet on Facebook and on Craigslist was protected by the First Amendment and, therefore, the failure of trial counsel to object to their admission constituted ineffective assistance.  Phelan raised this issue in his *pro se* brief before the Appellate Division.  The Appellate Division rejected this argument in its omnibus "[Phelan's] remaining contentions have been reviewed and found to be without merit."[77]

The fatal flaw in Phelan's First Amendment argument is that what he posted on the internet is not protected by the First Amendment.  The information that Phelan posted on Craigslist clearly constituted defamation,[78] which is not protected by the First Amendment.  The Supreme Court has stated "[f]alse statements of fact are particularly valueless [because] they

---

[76] *See, e.g., United States v. Russell*, 2012 WL 5382836 at *1 (2d Cir. Nov. 5, 2012) (citing *Russell v. Harms*, 397 F.3d 458, 466 (7th Cir. 2005)); *cf. United States v. MacDonald*, 916 F.2d 766, 773 (2d Cir. 1990) (en banc) (Kearse, J. dissenting) (noting that an arrest made while lawfully in the apartment would not violate *Payton*)).

[77] *Phelan*, 918 N.Y.S.2d at 612-13.

[78] Falsely accusing the victim of being an illegal alien, and using a stolen social security number, serious crimes, is defamatory *per se*.  *See, e.g., Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 409 (2d Cir. 2000).

interfere with the truth-seeking function of the marketplace of ideas,"[79] and that false statements "are not protected by the First Amendment in the same manner as truthful statements."[80] Because the victim in this case was not a public official, but a private individual, the posting on Craigslist does not fall within the scope of the protection accorded by *New York Times*, i.e., a statement made "with knowledge that it was false or with reckless disregard of whether it was false or not."[81] There was no colorable basis for raising a First Amendment claim. Therefore, counsel was not ineffective for failing to raise it.[82]

*Ground 2: Failure to Object to Seized Evidence.* Phelan contends that illegally seized evidence was used against him at trial and that trial counsel's failure to challenge its admissibility constituted ineffective assistance. Although trial counsel did object to the evidence, counsel withdrew the suppression motions. Phelan's position before this Court is based upon the supposition that about 99% of the items seized were not listed on the search warrant. Other than

---

[79] *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46 (1988).

[80] *Brown v. Hartlage,* 456 U.S. 45, 60-61 (1982); *see also, e.g., Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Counsel*, 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake"); *Herbert v. Lando,* 441 U.S. 153, 171 (1979) ("Spreading false information in and of itself carries no First Amendment credentials"); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) ("[T]here is no constitutional value in false statements of fact"); *Garrison v. Louisiana,* 379 U.S. 64 (1964) ("[T]he knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection").

[81] *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1971) (per curiam); *see Time Inc. v. Hill*, 385 U.S. 374 (1967) (applying the test to invasion of privacy suits baed upon false statements where a "matter of public interest" is concerned) (as characterized in *Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will County, Ill.*, 391 U.S. 563, 673 (1968))).

[82] *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective counsel to fail to raise meritless claims).

Phelan himself (whom he contends was "illegally seized"), Phelan does not identify those items that were seized. In ruling against Phelan, the Appellate Division held:

> Similarly unpersuasive is [Phelan's] claim that he was deprived of the effective assistance of counsel. Although [Phelan] deems counsel ineffective for withdrawing his suppression motions, our review of the evidence adduced at the *Huntley* and *Wade* hearing fails to reveal any likelihood of success of a challenge to the admissibility of his statements to police or the evidence seized from his residence pursuant to the search warrant. Furthermore, as the record reveals no colorable factual or legal basis for suppression as the product of an unlawful arrest, counsel was not remiss in failing to advance this argument.[83]

To the extent that Phelan's claim is based upon his perceived *Payton* violation, this Court rejected that claim above. To the extent he challenges the sufficiency of the search warrant, Phelan simply states in conclusory terms that it was insufficient, without any explanation, factual support, or argument. Phelan has not met his burden of establishing entitlement to relief.

*Ground 6: Refusing to permit Phelan to testify.*

Phelan simply alleges: "He [Counsel] would not let me take the stand even though I wanted to bring these issues up." First, it is not entirely clear precisely to which of the "issues" preceding that claim Phelan is referring. Second, at no point, either before the state courts or this Court, has Phelan described what his testimony would have been or how it could have affected the outcome on any of those issues. Phelan also overlooks the fact that had he taken the stand, his prior conviction could have been used to impeach him. Consequently, given the total lack of any evidentiary support, Phelan has failed to bear his burden of establishing entitlement to relief on this basis.

---

[83] *Phelan*, 918 N.Y.S.2d at 612.

*Ground 6: Failure to obtain Phelan's pre-trial release.* Under New York law, a criminal defendant is entitled to release on his own recognizance if:

> [A] felony complaint has been filed with a local criminal court, and who, since the time of his arrest or subsequent thereto, has been held in custody pending disposition of such felony complaint, and who has been confined in such custody for a period of more than one hundred twenty hours or, in the event that a Saturday, Sunday or legal holiday occurs during such custody, one hundred forty-four hours, without either a disposition of the felony complaint or commencement of a hearing thereon, . . .[84]

Phelan contends that, although he qualified for a release on his own recognizance under this provision, trial counsel failed to bring the motion necessary to obtain his release. Phelan does not provide any factual basis for his conclusion that he was entitled to release. Even if Phelan established that under New York law he should have been released on his own recognizance *and* that counsel was remiss in failing to obtain that release, Phelan does not explain how that affected the validity of his conviction or the sentence imposed, the only issues properly before this Court in a federal habeas proceeding. Phelan has cited no New York case that has held that a failure to release a criminal defendant in violation of CPL 180.80 entitled him or her to have a conviction vacated. Independent research by this Court not only has not uncovered any such supporting authority, but that the reverse is true.[85] Thus, even if trial counsel's performance was deficient, Phelan has not established that he was prejudiced, i.e., that

---

[84] N.Y. CPL § 180.80.

[85] *See, e.g., People v. Fagan*, 862 N.Y.S.2d 629, 630 (N.Y.A.D. 2008); *People v. Brown*, 585 N.Y.S.2d 106, 107 (N.Y.A.D.), *lv. denied*, 603 N.E.2d 960 (N.Y. 1992) (Table); *People v. Bensching*, 499 N.Y.S.2d 522, 523 (N.Y.A.D.), *lv. denied*, 494 N.E.2d 116 (1986) (Table).

the outcome would have been different. Phelan has failed to establish that he is entitled to relief on this basis.[86]

Phelan is not entitled to relied under his first, second, sixth, and eighth grounds.

<u>Ground 7: Ineffective Assistance of Appellate Counsel</u>

Phelan contends that because appellate counsel failed to raise on appeal that trial counsel was ineffective in failing to raise on appeal that his trial counsel was ineffective for failing to argue and gather evidence of an alleged severe disability as a mitigating sentence for sentencing purposes, appellate counsel was ineffective. Phelan raised this issue in his *coram nobis* motion, which was summarily denied without opinion or citation to authority.

Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it.[87] In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds.[88] This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[89]

---

[86] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

[87] *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a *de novo* standard to a federal claim not reached by the state court).

[88] *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *see Fama v. Comm'r of Correctional Svcs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).

[89] *Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was

(continued...)

The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[90]  "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."[91]  Consequently, it is necessary for this Court to examine the merits of Phelan's fifth ground: that trial counsel was ineffective in not investigating Phelan's mental deficiencies in connection with the imposition of the sentence.[92]  As the New York Court of Appeals has noted with respect to challenging an appellate counsel's failure to raise the issue of ineffective assistance of trial counsel:

> We recognize that in making appellate arguments, attorneys must evaluate the performance of trial counsel and, when appropriate, raise claims of ineffective representation.  Although it involves a kind of Monday morning quarterbacking, there are instances—unusual, to be sure, but on occasion merited—when trial counsel's representation is derelict.  The case before us involves a second layer of review, in which the Tuesday morning quarterback assails the Monday morning quarterback for not assailing the quarterback who actually played the game.[93]

---

[89](...continued)
not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.

[90] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Aparicio*, 269 F.3d at 99 (holding that it is not ineffective counsel to fail to raise meritless claims).

[91] *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000), quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (internal quotation marks omitted).

[92] As noted above, the Court agrees with Respondent that Phelan's fifth ground is unexhausted.  The failure to exhaust notwithstanding, this Court must nevertheless determine whether that question was meritorious and whether there is a reasonable probability that the outcome would have been different absent the constitutional error in determining whether appellate counsel was ineffective in failing to raise it.  *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Mosby v. Senkowski*, 470 F.3d 515, 519 (2d Cir. 2006).

[93] *People v. Stultz*, 810 N.E.2d 883, 890 (N.Y. 2004) (footnote omitted).

Phelan's argument on this ground suffers from the same infirmity that permeates throughout his Petition:  long on conclusions, but short on evidentiary support for the factual basis he alleges, to the extent Phelan even alleges a factual basis.  Here, other than his own protestations, Phelan presents no evidence that he suffers from a "severe disability."  Nor does Phelan make even a rudimentary attempt to argue how, had trial counsel made the investigation Phelan claims counsel did not make, discovered evidence supporting the facts Phelan contends exist, *and* presented it to the trial court, it would have altered the sentence Phelan received, i.e., that he would have received a lesser sentence.  Phelan has the burden of establishing entitlement to habeas relief, both factually and legally, i.e., that the state court either misapplied the law or unreasonably applied the facts of the case to the correct principle of law.[94]  Phelan has failed to shoulder this burden.  In this case, this Court cannot find that the assumed decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[95]  Phelan is not entitled to relief under his seventh ground.

---

[94] *See Grayton v. Ercole*, 691 F.3d 165, 174 (2d Cir. 2012).

[95] 28 U.S.C. § 2254(d).

## V.  CONCLUSION AND ORDER

Phelan is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[96]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[97]

The Clerk of the Court is to enter judgment accordingly.

Dated:  January 14, 2013.

_/s/ James K. Singleton, Jr._
JAMES K. SINGLETON, JR.
United States District Judge

---

[96] 28 U.S.C. § 2253(c); _Banks v. Dretke,_ 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting _Miller-El_, 537 U.S. at 327)).

[97] _See_ Fed. R. App. P. 22(b); Second Circuit R. 22.1.